IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MEDCHOICE RISK RETENTION GROUP, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| MAHENDRA AMIN, M.D., | ) ) ) |
| Defendant. | ) ) |

CIVIL ACTION FILE NO.

_____

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff MedChoice Risk Retention Group, Inc. ("MedChoice") alleges as follows:

**I.     INTRODUCTION AND NATURE OF THE ACTION**

1. This is an insurance coverage action seeking a declaration that MedChoice has no duty to defend or indemnify Mahendra Amin, MD ("Dr. Amin") with respect to the lawsuit brought against him in the U.S. District Court for the Middle District of Georgia, styled *Oldaker et al., on behalf of herself and other similarly situated v. Giles et al.*, Case No. 7:20-cv-00224-WLS-MSH (the "Lawsuit").

2. Dr. Amin seeks coverage from MedChoice for the Lawsuit in connection with the injuries to the named petitioners, on behalf of themselves and others similarly situated, who allege they were taken to Dr. Amin for gynecological treatment while detained in U.S. Immigration and Customs Enforcement ("ICE") custody at the Irwin County Detention Center ("ICDC"). According to the Lawsuit, the proposed class consists of individuals who were subjected to "non-consensual, medically unindicated, and/or invasive gynecological procedures" by Dr. Amin between 2018 and 2021.

3. As outlined below, MedChoice seeks a declaration of no coverage under the MedChoice Medical Professional Liability Insurance Policy, Policy number MCGA-0569-01, issued to Mahendra Amin, M.D., for the period of February 7, 2020 to February 7, 2021 (the "MedChoice Policy").

4. MedChoice is entitled to a declaration of no coverage because, among other reasons, the MedChoice Policy excludes coverage for liability of any insured for any claims or acts, conduct, or omission related to professional services on behalf of the United States Government. Dr. Amin treated each of Petitioners in the Lawsuit—detainees of ICE—as the result of referrals from ICE on ICE's behalf.

5. In the alternative, MedChoice is entitled to a declaration of no coverage because, among other reasons, the MedChoice Policy excludes coverage for claims against any insured for correctional medicine, which is defined in the Policy as "the rendering of professional services for or on behalf of any correctional or penal institution." Dr. Amin was providing professional services for or on behalf of ICDC when treating the detainees.

## II.    PARTIES

6. Plaintiff MedChoice is a risk retention group organized and existing under the laws of the State of Vermont, with its principal place of business in Burlington, Vermont. For diversity purposes, MedChoice is a citizen of the State of Vermont.

7. Defendant Mahendra Amin, M.D., is an individual who resides in the State of Georgia. Dr. Amin's practice is located in Douglas, Georgia, in Coffee County. He also has privileges at Irwin County Hospital, in Ocilla, Georgia, in Irwin County. For diversity purposes, Dr. Amin is a citizen of the State of Georgia.

8. Defendant Dr. Amin is a named defendant in the Lawsuit.

### III.   JURISDICTION AND VENUE

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, and because Dr. Amin resides in this judicial district for venue purposes.

11. The request for declaratory judgment is brought pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

12. An actual and justiciable controversy exists between MedChoice and Dr. Amin within the meaning of 28 U.S.C. § 2201 regarding whether MedChoice has a duty to defend and/or indemnify Dr. Amin under the MedChoice Policy.

### IV.   THE LAWSUIT

13. On or about December 21, 2020, a putative class of plaintiffs filed suit against Dr. Amin, and others, in the U.S. District Court for the Middle District of Georgia, styled *Oldaker et al., on behalf of herself and other similarly situated v. Giles et al.*, Case No. 7:20-cv-00224-WLS-MSH (the "Lawsuit").

14. A true and correct copy of the Complaint filed in the Lawsuit is attached hereto as **Exhibit 1**.

15. The Lawsuit is filed on behalf of a putative class:

The proposed "Main Class":   All individuals who were subjected to non-consensual, medically unindicated, and/or invasive gynecological procedures while they were detained in U.S. Immigration and Customs Enforcement [ICE] custody at the Irwin County Detention Center [ICDC].

Ex. 1 at ¶ 515.

3

> The proposed "Retaliation Sub-Class":  All individuals who, after speaking out about or protesting experiencing non-consensual, medically unindicated, and/or invasive gynecological procedures while they were detained in U.S. Immigration and Customs Enforcement [ICE] custody at the Irwin County Detention Center [ICDC] were subject to retaliation by ICE and ICDC Respondents.

*Id.* at ¶ 516.

16. ICDC was required to seek approval from ICE to send detainees to "[p]rivate physicians, such as [Dr.] Amin." *Id.* at ¶¶ 130-31, 168, 186-88, 207, 222, 301, 317, 358, 376.

17. All of the putative class members were detainees at ICDC, and several were taken to Dr. Amin in handcuffs. *Id.* at ¶¶ 168, 188, 260, 288, 359.

18. Petitioners allege Dr. Amin conducted painful, transvaginal ultrasounds and internal exams, when not medically indicated and without their consent, causing pain and bleeding. *Id.*, e.g., ¶¶ 169, 190, 223, 245, 262, 286, 303, 317, 340, 377, 396, 416, 429.

19. Petitioners allege that they were subjected to shots of "Depo," a form of birth control, without consent or explanation, and/or gynecological surgeries to which they did not consent and that were not medically indicated, in some instances causing permanent injury to their reproductive organs. *Id.*, e.g., ¶¶ 72, 224, 227-30, 235, 246, 262-64, 288-94, 319, 341-42, 408, 418-19, 436, 453-54, 460, 472-73.

20. Petitioners also allege they were denied access to their medical records or provided incomplete or inaccurate medical records that omitted treatment provided by Dr. Amin. *Id.* at ¶¶ 173, 270, 364, 438, 446, 482-83.

21. The Lawsuit further alleges that ICDC and ICE were aware of complaints of Dr. Amin's medical abuse of women detainees since "at least 2018," but that ICDC/ICE continued to send women to him and retaliated against the women for speaking out against his abuses by mistreating them, by withholding necessities and the ability to communicate with their families and attorneys, and by having the women deported. *Id.* at ¶¶ 97-124, 148, 239, 329, 371, 412, 516.

22. Petitioners allege that after speaking out about their experiences with Dr. Amin, to the Department of Justice, to Congressional Representatives, to their attorneys, and to the media, they were retaliated against. *Id.* at ¶¶ 125, 146, 149, 152, 182, 198, 200, 328, 345-46, 364-65, 366-71, 382, 384, 387, 390-91.

23. For example, Petitioners allege they were suddenly scheduled to be deported, within days of speaking out about Dr. Amin, despite having been in the United States for dozens of years (*id.* at ¶¶ 125, 146, 182, 198, 200, 328, 345-46, 366-71, 384, 387); and were denied medications and had their ability to communicate with counsel or the media restricted. *Id.* at ¶¶ 149, 152

24. The Lawsuit alleges causes of action against Dr. Amin for: (1) violations of the First and Fifth Amendments; (2) violation of the Rehabilitation Act; (3) conspiring to deter testimony and participation in investigations and court proceedings under 42 U.S.C. § 1985(2); (4) breach of contract; (5) gross negligence; (6) medical battery; (7) medical malpractice; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress.

25. The petitioners seek relief, from Dr. Amin and the other named defendants, in the form of: (1) class certification; (2) compensatory damages; (3) punitive damages; (4) injunctive relief; and (5) attorneys' fees and costs. *Id.*

26. Pursuant to a reservation of rights, MedChoice is defending Dr. Amin from the Lawsuit under the Medical Professional Liability coverage.

### V.     THE MEDCHOICE POLICY

27. The MedChoice Policy provides, among other coverages, Medical Professional Liability coverage (Coverage A), with a limit of liability of $1,000,000 each medical incident, subject to an aggregate of $3,000,000.

28. A true and correct copy of the Policy is attached hereto as **Exhibit 2**.

29. The insuring agreement for the Medical Professional Liability coverage provides:

### I. INSURING AGREEMENTS

A. **COVERAGE A: <u>MEDICAL PROFESSIONAL LIABILITY INDIVIDUAL PROFESSIONAL LIABILITY</u>**

> **Insurer** shall pay, on behalf of the **insured**, **damages**, for **claims because** of a **medical incident** arising from **professional services** rendered, or which should have been rendered, by the **insured** . . .
>
> *provided* that the claim:
>
> 1. arises out of a medical incident that occurred on or after the retroactive date; and
>
> 2. is first reported to the insurer during the policy period;

30. The MedChoice Policy contains the following relevant definitions:

### III. DEFINITIONS

B. **BODILY INJURY** means physical injury, sickness, disease, **disability**, mental injury, mental anguish, or death sustained by an individual other than the **insured**, employees of the **insured**, or any other persons covered by this **policy**.

C. **CLAIM** means:

   1. a written demand or **suit**, for **damages** arising out of a **medical incident**, to which this insurance applies; or

   2. written notice to the **insurer** of a **medical incident** that may give rise to a **claim**.

   For purpose of subparagraph **1.**, a **claim** shall be deemed first made when received in writing by any **insured**. For purpose of subparagraph **2.**, a **claim** shall be deemed first made when written notice of a **medical incident** is received by the **insurer**. All **claims** arising out of the same **medical incident** shall be deemed reported to the **insurer** at the time the first **claim** against the **insured** arising out of that **medical incident** is reported to the **insurer**.

D. **CORRECTIONAL MEDICINE** means the rendering of **professional services** for or on behalf of any correctional or penal institution.

    E.    **DAMAGES** means the amount for which the **insured** becomes legally obligated to pay as actual or compensatory damages. **Damages** do not include:

        1.    Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;

        2.    Taxes, criminal or civil fines, or other penalties imposed by law;

        3.    Attorneys' fees awarded pursuant to contract or statute[;]

        4.    Sanctions;

        5.    Matters which are uninsurable under the law;

        6.    The return, withdrawal, reduction or restitution or payment of any fees, profit or charges for services or consideration and/or any expenses paid to the **insured** for services, products or goods;

        7.    The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

    F.    **DEFENSE COSTS** means all reasonable and necessary costs incurred in the investigation, defense, negotiation and settlement of any **claim** or **suit**.  They including, attorney fees, witness and expert fees, court costs, expenses of investigation, expenses for medical examinations or investigative reports, expenses of telephone charges, clerical and office expenses.

    G.    **INSURED** means any person, firm, corporation, professional association or organization specifically designated and listed on the Declarations or a subsequent endorsement or who qualifies as an **insured** under SECTION VII. WHO IS AN INSURED. . . .

    H.    **INSURER** means MedChoice Risk Retention Group, Inc.

    I.    **MEDICAL INCIDENT** means an act or omission or series of related acts or omissions occurring in the course of providing **professional services** to a **patient** which could or did result in **bodily injury** for which **damages** may reasonably be expected or should have known to be sought against the **insured**.  All **medical incidents** arising out of the same or related acts or omissions shall be treated as a single **medical incident**.  Written notice to the **insurer** is required.  The **medical incident** must have occurred

subsequent to the **retroactive date** and be reported in writing to the **insurer** during the **policy period**.

\* \* \*

M. **PATIENT** means a person to whom any **insured** has become obligated by law as a healthcare provider. A female **patient** and her unborn fetus(es) and/or live birth(s) shall be deemed to be only one **patient**.

\* \* \*

S. **PROFESSIONAL SERVICES** [*as amended by Endorsement 4, Form A.012.4—Schedule of Contracts or Locations*] means:

1. Direct treatment, diagnostic tests or procedures, therapeutic procedures, pathological analyses, or reports to a **patient** necessary to the practice of the **insured's** specialty as stated on the Declarations or by endorsement, but only at the location(s) designated below or in connection with the contract(s) designated below:

| Location / Contract Name | Address | County | Start Date | End Date |
|---|---|---|---|---|
| Mahendra Amin, M.D. | 1022 W Bryan St Douglas, GA 31533 | Coffee | 2/7/2010 | 2/7/2020 |
| Irwin County Hospital | 710 N Irwin Ave Ocilla, GA 31774 | Irwin | 2/7/2010 | |
| Coffee Regional Medical Center | 1101 Ocilla Rd Douglas, GA 31533 | Coffee | 2/7/2010 | |
| Mahendra Amin, M.D. | 1150 Kirkland Ln Douglas, GA 35133 | Coffee | 2/7/2010 | |

31. The MedChoice Policy contains the following relevant exclusions:

   **IV.   EXCLUSIONS—NO DEFENSE OR INDEMNIFICATION**

This **policy** does not apply, and the **insurer** shall not be obligated to provide a defense or pay **damages** or **defense costs** to any **insured** for any **claim** based upon, arising out of or resulting from any actual or alleged:

\* \* \*

D. Liability of any **insured** related to the **insured's** participation in any conspiracies or any unlawful, fraudulent, intentional or criminal acts.

8

* * *

I. Libel, slander, defamation, malicious prosecution, false arrest, improper detention, improper imprisonment or abuse of process by any **insured**.

* * *

L. Failure to maintain all medical records in original condition, or for creating, making or adding, altering, modifying or improperly disposing of any medical, hospital or other records related to any **claim** or person related hereto. Liability for any **claim** shall be denied fi any medical record related to any person involved has been modified, altered, corrected, changed, substituted, replaced, revised, or arranged to reveal information in a fashion other than the original medical record content.

* * *

N. **Claim** arising out of a **medical incident** that the **insured** knew or reasonably should have foreseen and/or expected, prior to the effective date of this **policy**, would result in a **claim**, whether baseless or not.

* * *

S. Action, conduct or omission which violates state or federal laws or regulations.

T. Liability of any **insured** for any **claims** or acts, conduct, or omission related to **professional services** on behalf of the United States Government . . . .

* * *

V. **EXCLUSIONS—DEFENSE ONLY NO INDEMNIFICATION**

This **policy** does not provide indemnification for:

A. Any **claim** for punitive or exemplary **damages**, statutory fines or any other fines.

B. Any **claim** resulting from sexual intimacy, sexual molestation, sexual harassment, sexual exploitation or sexual assault.

However, where a **suit** includes allegations covered by this **policy**, accompanied by allegations in paragraph **A.** or **B.** above, **insurer** shall provide a defense and pay **defense costs** until such time as no other covered

9

allegations remain or the allegations concerning **A.** or **B.** have been established as true.

## VI.  EXCLUDED PROCEDURES—NO DEFENSE OR INDEMNIFICATION

This **policy** does not apply, and the **insurer** shall not be obligated to provide a defense or pay **damages** or **defense costs** for any **claim** against any **insured** under this **policy** for any of the following procedures:

\* \* \*

D.   **Correctional medicine**, unless specified on the Declarations or by endorsement as the specialty.

\* \* \*

## COUNT ONE
## DECLARATORY JUDGMENT

32.   MedChoice hereby incorporates and re-alleges the allegations in paragraphs 1–67 as if fully set forth herein.

33.   There exists a genuine and bona fide dispute, and an actual controversy and disagreement, between MedChoice and Dr. Amin with regard to whether MedChoice has a duty to defend or indemnify Dr. Amin from the Lawsuit.

34.   MedChoice's rights and obligations owed to Dr. Amin under the MedChoice Policy with respect to the Lawsuit are subject to the terms, exclusions, and conditions of the MedChoice Policy.

35.   MedChoice is entitled to a declaration of no coverage based on one or more of the following exclusions. The MedChoice Policy states that "The **policy** does not apply, and the **insurer** shall not be obligated to provide a defense or pay **damages** or **defense costs** to any **insured** for any **claim** based upon, arising out of or resulting from any actual or alleged . . . . :"

  a.   Under Exclusion IV.T., the MedChoice Policy bars coverage for "[l]iability of any **insured** for any **claims** or acts, conduct, or omission related to

                **professional services** on behalf of the United States Government[.]" Ex. 2 at 13 (emphasis added).  Dr. Amin was providing professional services on behalf of ICE, assisting ICE in fulfilling its obligation to provide medical care to detainees.  The Complaint alleges that ICE approved referrals for the women to Dr. Amin. Ex. 1 at ¶¶ 130-31, 168, 186-88, 207, 222, 301, 317, 358, 376.  Based on this exclusion, there is no coverage for defense or indemnity under the MedChoice Policy for the Lawsuit because Dr. Amin was providing professional services on behalf of the United States Government when treating the detainees.

    b.    Under Exclusion IV.D., the MedChoice Policy bars coverage for "[l]iability of any **insured** related to the **insured's** participation in any conspiracies or any unlawful, fraudulent, intentional or criminal acts." Ex. 2 at 11.  The Complaint alleges that Dr. Amin, along with the other defendants, conspired to deter witnesses and victims from participating in investigations and court proceedings through retaliation, up to and including deportation. Ex. 1 at ¶ 668.  The Complaint also alleges Dr. Amin engaged in medical battery, acting with "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" (*id.* at ¶ 739); and that his conduct was "extreme and outrageous."  *Id*. at ¶ 757.  Based on this exclusion, there is no coverage for Count 11 of the Lawsuit.

    c.    Under Exclusion IV.L., the MedChoice Policy bars coverage for:

> Failure to maintain all medical records in original condition, or for creating, making or adding, altering, modifying or

11

>improperly disposing of any medical, hospital or other records related to any **claim** or person related thereto. Liability for any **claim** shall be denied if any medical record related to any person involved has been modified, altered, corrected, changed, substituted, replaced, revised, or arranged to reveal information in a fashion other than the original medical record content.

Ex. 2 at ¶ 12. The Complaint alleges that several women were denied access to their medical records, and when they did receive them, they were incomplete or inaccurate and omitted treatment provided by Dr. Amin. Ex. 1 at ¶¶ 173, 270, 364, 438, 446, 482-83. Based on this Exclusion, there is no coverage under the MedChoice Policy for any claims involving any persons whose medical records have been created, made, added, altered, modified or improperly disposed of.

d. Under Exclusion IV.S., the MedChoice Policy bars coverage for "[a]ction, conduct or omission which violates state or federal laws or regulations." Ex. 2 at 13. The Complaint alleges that Dr. Amin, along with the other defendants, conspired to deter witnesses and victims from participating in investigations and court proceedings through retaliation, up to and including deportation. Ex. 1 at ¶ 668. The Complaint also alleges Dr. Amin engaged in medical battery. *Id.* at ¶ 739. Based on this exclusion, there is no coverage under the MedChoice Policy for Counts 11 or 17 of the Lawsuit.

e. Under Exclusion IV.I, the MedChoice Policy bars "improper detention" or "improper imprisonment." Ex. 2 at 12. The Complaint alleges Dr. Amin performed non-consensual medical procedures, sometimes under general anesthesia. Ex. 1 at e.g., ¶¶ 51, 516.

12

       f.      Under Exclusion IV.N., the MedChoice Policy bars coverage for any "**[c]laim** arising out of a **medical incident** that the **insured** knew or reasonably should have foreseen and/or expected, prior to the effective date of this **policy**, would result in a **claim**, whether baseless or not." *Id* at 12. The MedChoice Policy incepted on February 1, 2020. *Id*. at 1. The Complaint alleges that complaints had been made about Dr. Amin's treatment of women detainees since "at least 2018," and treatment of named petitioners is alleged to have taken place beginning in 2018. Ex. 1 at ¶¶ 1, 53.

36.    MedChoice is also entitled to a declaration of no coverage based on the following exclusion. Exclusion VI.D. of the MedChoice Policy bars coverage for "defense . . . [,] **damages** or **defense costs** <u>for any **claim** against any **insured** under this **policy** for any of the following procedures . . . [] **Correctional medicine**</u>[.]" Ex. 2 at 15 (emphasis added). Correctional medicine is defined as "the rendering of **professional services** for or on behalf of any correctional or penal institution." Ex. 2. At 8. Each of the Petitioners was a detainee of ICDC. Ex. 1, *passim*. Based on this exclusion, there is no coverage for defense or indemnity under the MedChoice Policy for the Lawsuit because Dr. Amin was providing professional services for or on behalf of ICDC when treating the detainees.

37.    MedChoice is also entitled to a declaration of no coverage because the Professional Liability Coverage (Coverage A) is not triggered because the allegations in the Lawsuit—that procedures were "medically unindicated" (Ex. 1 at ¶ 1)—do not arise out of the providing of "professional services" or a "medical incident" as those terms are defined in the Policy. Ex. 2 at 9, 10, 37.

13

LEGAL\53318569\2

38. MedChoice is also entitled to a declaration of no indemnity coverage based on Exclusion V.B. The MedChoice Policy states that:

> This **policy** does not provide indemnification for . . . [a]ny **claim** resulting from sexual intimacy, sexual molestation, sexual harassment, sexual exploitation or sexual assault.
>
> However, where a suit includes allegations covered by this **policy,** accompanied by allegations [of sexual intimacy, sexual molestation, sexual harassment, sexual exploitation or sexual assault], **insurer** shall provide a defense and pay **defense costs** until such time as no other covered allegations remain or the allegation concerning [sexual intimacy, sexual molestation, sexual harassment, sexual exploitation or sexual assault] have been established as true.

Ex. 2 at 14. The Complaint alleges that Dr. Amin subjected petitioners to "non-consensual, medically unindicated, and/or invasive gynecological procedures," some of which "amounted to sexual assault." Ex. 1 at ¶ 1.

39. Under Definition III.E., **damages** specifically does not include:

   1. Punitive or exemplary damages or multiple portions of damages in excess of actual damages, including trebling of damages;

   2. Taxes, criminal or civil fines, or other penalties imposed by law;

   3. Attorneys' fees awarded pursuant to contract or statute;

   4. Sanctions;

   5. Matters which are uninsurable under law;

   6. The return, withdrawal, reduction nor restitution or payment of any fees, profit or charges for services or consideration and/or any expenses paid to the insured for services, products or goods; or

   7. The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

Ex. 2 at 8–9. The Complaint seeks punitive damages, attorneys' fees, and injunctive relief. Ex. 1 at Prayer ¶¶ D, F, I, J. MedChoice is entitled to a declaration of no coverage for any awards in the Lawsuit that do not constitute "damages" as that term is defined in the Policy.

## COUNT TWO
## RECOUPMENT OF DEFENSE COSTS INCURRED

40. MedChoice hereby incorporates and re-alleges the allegations in paragraphs 1–74 as if fully set forth herein.

41. If the Court finds there is no coverage for the Lawsuit, MedChoice seeks an order from the Court that MedChoice is entitled to withdraw from Dr. Amin's defense and is entitled to a recoupment of its attorneys' fees expended in Dr. Amin's defense in the Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, MedChoice prays for relief as follows:

1. For a declaration that MedChoice owes no duty under the MedChoice Policy to Dr. Amin;

2. For a declaration that MedChoice may withdraw from providing Dr. Amin with a defense in the Lawsuit;

3. For a declaration that MedChoice is entitled to reimbursement of all costs and attorneys' fees paid by MedChoice in connection with Dr. Amin's defense in the Lawsuit;

4. For a declaration otherwise establishing MedChoice's duties and responsibilities under the MedChoice Policy;

5. For all costs, attorney's fees, and disbursements;

6. For all other costs and fees as permitted by law; and

7. For such other and further relief this Court may deem just and proper.

This 17th day of August, 2021.

/s/ *Alycen A. Moss*
Alycen A. Moss
Georgia Bar No. 002598
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, GA  30309
Telephone:     (404) 572-2052
Facsimile:     (877) 728-1396
E-mail:     amoss@cozen.com

Terri A. Sutton, *pro hac pending*
999 Third Street, Suite 1900
Seattle, WA 98104
Telephone:     (206) 224-1272
Facsimile:     (206) 456-4359
E-mail:     tsutton@cozen.com

*Attorneys for Plaintiff*
*MedChoice Risk Retention Group, Inc.*